McCOMB v. SUPER–A FERTILIZER
WORKS, Inc.

No. 4293.

Circuit Court of Appeals, First Circuit.

Jan. 27, 1948.

Frederick U. Reel, Atty., Dept. of Labor, of Washington, D. C. (William S. Tyson, Sol., Bessie Margolin, Asst. Sol., and Morton Liftin and Helen Grundstein, Attys., Dept. of Labor, all of Washington, D. C., and Kenneth P. Montgomery, Regional Atty., Dept. of Labor, of San Juan, P. R., on brief), for appellant.

Miguel A. Garcia Mendez and Arturo Ortiz Toro, both of San Juan, P. R., for appellee.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

MAHONEY, Circuit Judge.

This is another case under the Fair Labor Standards Act, 52 Stat. 1060, 29 U.S. C.A. § 201 et seq., presenting the question whether certain employees come within its coverage. The action was brought to restrain the defendant from violating the provisions of §§ 15(a) (2) and 15(a) (5) of the Act.

The defendant is a Puerto Rican corporation engaged in the manufacture of chemical fertilizers at Mayaguez, Puerto Rico.

It sells them to local farmers to be used by them in fertilizing land on which sugarcane is grown. The latter is sold to sugar mills and processed into sugar and molasses, which are exported. The defendant's employees who receive the ingredients for the fertilizers brought in from outside the island, and those who deliver them to the defendant's warehouse, including the receiving gang, are paid in accordance with the provisions of the Act. As to those employees, there is no question of coverage. But the employees who are engaged in mixing the fertilizer, in bagging it and delivering it to the trucks to be taken to the farms, are not paid the minimum wages nor the overtime compensation, as provided in §§ 6 and 7. The district court held that they are not covered since neither the fertilizer nor the sugarcane is shipped in interstate commerce, and the production of fertilizer is not an occupation necessary for the production of goods for commerce. The Administrator has appealed. He contends that those employees who are engaged in producing, bagging and delivering fertilizer, which is used to enrich the soil and increase the yield of sugarcane from which sugar and molasses are manufactured and shipped in interstate commerce, are engaged in a process or occupation necessary to the production of goods for commerce within the meaning of § 3(j).[1]

In Puerto Rico sugarcane farming is so intensive that all soil adapted to sugarcane is planted. The latter is perishable and must be processed into raw sugar soon after being harvested. The sugarcane is not exported, but the sugar is. During the course of the testimony the district court repeatedly stated that fertilizer was necessary to make a profitable crop. However, it found that sugarcane may be grown profitably without the application of fertilizer, but that the application of fertilizer to its cultivation is beneficial to its growth and increases its production. We find it difficult to reconcile its statements with the finding

---

[1] Section 3: "(j) 'Produced' means produced, manufactured, mined, handled, or in any other manner worked on in any State; and for the purposes of this Act an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State."

of fact. But in the view we take of the case it is immaterial, since the fertilizer admittedly was used and resulted in the production of additional sugarcane.

 Congress has declared that the purpose of the Act is to protect employees engaged in commerce or in the production of goods for commerce from sub-standard wages and excessive hours detrimental to their health, efficiency and general well-being. As stated in Bowie v. Gonzalez, 1 Cir., 1941, 117 F.2d 11, the Act is remedial in its nature and is to be liberally construed. It includes in § 3(j) persons employed in any process or occupation necessary to the production of goods for commerce. In enacting this legislation, Congress did not exercise its full power over commerce and indicated its purpose not to interfere with local business but to leave it to the protection of the states. Kirschbaum Co. v. Walling, 1942, 316 U.S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638. It also exempted from the benefits of the Act in § 13(a) (6) persons employed in agriculture.

 As used in § 3(j) the word "necessary" cannot be defined with mathematical precision and definiteness. Whether the work of any particular employee is so closely connected with the process of production for commerce as to make his occupation necessary to the production of goods for commerce is a matter of degree. The work must have such a close and immediate tie with the process of production as to be an essential part of it, and to determine whether an occupation is necessary calls for the exercise of that common-sense judgment which the law applies in problems of causation. Kirschbaum Co. v. Walling, supra; Davila v. Porto Rico Railway Light & Power Co., 1 Cir., 1944, 143 F.2d 236. The meaning of "necessary" should not be given an unwarranted rigidity in its application, but should be harmonized with its context and "no hard and fast rule may be transposed from one industry to another to say what is necessary in 'the production of goods.' What is practically necessary to it will depend on its environment and position." Armour & Co. v. Wantock, 1944, 323 U.S. 126, 130, 65 S.Ct. 165, 167, 89 L.Ed. 118.

In Kirschbaum Co. v. Walling, supra, it was held that employees engaged in the operation and maintenance of a loft building in which the tenants manufactured wearing apparel, were engaged in an occupation necessary for the production of goods for commerce. A manufacturer of milk products in Borden Co. v. Borella, 1945, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, 161 A.L.R. 1258, owned and operated a twenty-four story office building. It occupied the major portion of it for its central offices. Its products were actually produced elsewhere but it was held that the maintenance employees of the office building were covered by the Act. However, it was held in 10 East 40th St. Bldg. v. Callus, 1945, 325 U.S. 578, 65 S.Ct. 1227, 89 L.Ed. 1806, 161 A.L.R. 1263, that under the particular facts certain maintenance employees such as elevator starters and operators, window cleaners, watchmen and the like, were not covered by the Act. There the employees worked in a forty-eight story New York office building which was operated as an independent enterprise. The building was devoted exclusively to offices and no manufacturing was carried on within it. The court said at pages 582, 583 of 325 U.S., at page 1229 of 65 S.Ct.: "Merely because an occupation involves a function not indispensable to the production of goods, in the sense that it can be done without, does not exclude it from the scope of the Fair Labor Standards Act. Conversely, merely because an occupation is indispensable, in the sense of being included in a long chain of causation which brings about so complicated a result as finished goods, does not bring it within the scope of the Fair Labor Standards Act."

In the instant case, the Administrator seeks to prove that there is a close and immediate tie between the work of certain employees of the fertilizer company and the production of sugar and molasses. He relies mainly on Meeker Cooperative Light & Power Ass'n v. Phillips, 8 Cir., 1946, 158 F.2d 698; Reynolds v. Salt River Valley Water Users Ass'n, 9 Cir., 1944, 143 F.2d 863; and Walling v. Amidon, 10 Cir., 1946, 153 F.2d 159.

In the Meeker case, the Cooperative distributed electricity for farmers, creameries,

a hatchery, seed-corn processors, fur farms, two airline beacons, churches, schools and homes. With the exception of the churches, schools and homes, the consumers used the electricity so distributed for light, heat and power in the regular course of their business. It was stipulated that the operation of these consumers resulted in the production of goods, a substantial portion of which went into interstate commerce. All the electricity was generated and distributed within the State of Minnesota. If the electricity was not supplied, the consumers would be unable to do business. It was held that the employees of the Cooperative who were engaged in new construction and maintenance of the lines of transmission and its office workers were within the terms of the Act.

In the Reynolds case, the employees were engaged in the irrigation and furnishing of water to arid land for the production of lettuce and other vegetables, a large part of which was shipped in interstate commerce, and the employees were held to be engaged in an operation necessary for the production of goods for commerce.

In the Amidon case, the question presented was whether employees who were engaged in mixing and blending different kinds of sand which produced what is known as cast shed sand, came under the Act. The sand itself was sold to a corporation which owned and operated a large steel mill where it produced iron and steel which it manufactured into railroad rails, construction beams, castings, wire and numerous other iron and steel commodities which were shipped in interstate commerce. The sand was used in lining troughs, which carried molten metal and slag from blast furnaces, to protect the troughs from the intense heat of the metal and to prevent it from sticking to the troughs as it flowed through. This type of sand must be used at this stage of the manufacture of iron and steel products, and must be replaced frequently in the troughs. The court held that the work of these employees who prepared the sand "is intimately related to the actual physical process by which the goods are manufactured. Their work is tied so closely and immediately with the process of production of goods for commerce, and

is so much a part of the integrated and co-ordinated productive efforts by which the goods are produced, that * * * such employees should be regarded as engaged in an 'occupation "necessary to the production"' of goods for commerce." 153 F.2d at page 161.

In the Reynolds case and the Meeker case, the employees were held to be covered by the Act because they performed operations necessary to the production of goods for commerce. The work of employees who prepare fertilizer appears no further removed in degree or kind from the "production" than the furnishing of irrigation and electricity in those two cases. The defendant, however, argues that the cases are distinguishable since in both of those cases the farm products themselves moved in commerce, and here the sugarcane did not leave the island until it had been converted into sugar. We do not think such a distinction can be drawn between operations necessary to the production of finished goods and operations necessary to the production of parts or ingredients of the finished goods. It is well settled that persons engaged in the production of items which are not shipped in commerce until after further processing are covered by the Act. Bracey v. Luray, 4 Cir., 1943, 138 F.2d 8; Mid-Continent Pipe Line Co. v. Hargrave, 10 Cir., 1942, 129 F.2d 655. Employees engaged in producing raw materials for sale and further processing within the state are engaged in production of goods for commerce if the final product is shipped out of the state, even though the materials have lost their original identity. It is immaterial that the parts or ingredients may be further processed by a second or third employer before they move in commerce. See Dodd, The Supreme Court and Fair Labor Standards, 1941–1945, 59 Harv.L.Rev. 321, 326–27 (1946). Thus employees who handled scrap iron which was sold locally to a wholesale scrap dealer who in turn sold it locally to a shipbuilding company which used it in the fabrication of ships, were held entitled to the protection of the Act. Bracey v. Luray, supra.

The Amidon case, supra, is more analogous to the instant case. The employees

in that case prepared the cast shed sand which was necessary to the production of iron and steel. This was later processed into the final product. Thus the employees there as in the instant case, were engaged in an occupation necessary to the production of an ingredient of an article which moved in commerce.

We, therefore, conclude that here the employees were employed in an operation necessary for the production of goods for commerce, and clearly within the language of the Supreme Court in Roland Electrical Co. v. Walling, 1946, 326 U.S. 657, 663, 66 S.Ct. 413, 416, 90 L.Ed. 383: "[The Act] does *not* require the employee to be employed even in the production of an article which *itself* becomes the subject of commerce or transportation among the several states. It is enough that the employee be employed, for example, in an occupation which is necessary to the production of a part of any other 'articles or subjects of commerce of any character' which are produced for trade, commerce or transportation among the several states. This does *not* require an employee to be employed exclusively in the specified occupation. This does *not* require that the occupation in which he is employed be *indispensable* to the production under consideration. It is enough that his occupation be *'necessary to the production.'* There may be alternative occupations that could be substituted for it but it is enough that the one at issue is needed in such production and would, if omitted, handicap the production."

The defendant also urges that its employees come within § 13(a) (6) which exempts employees employed in agriculture. This question was not passed upon by the district court and it is dubious if the applicability of the exemption was properly raised by the defendant's answer in the district court. But even if the question is properly before us, we do not think the exemption is applicable. Section 3(f) of the Act defines agriculture as including farming in all its branches and including the cultivation and tillage of the soil, dairying, the production, cultivation, growing and harvesting of any agricultural commodity. The defendant contends that the word "production" should be construed in accordance with the definition of "produced" in § 3(j), and thus, if the manufacture of fertilizer is considered necessary to the production of sugarcane, it is included within the agricultural exemption. But we do not think that "production" was used in § 3(f) in its technical sense. If it were, it would render the use of the words, "cultivation, growing, and harvesting" mere surplusage, since the word "produced" as defined in § 3(j) would include them. The legislative history of the introduction of the word "production" into § 3(f) indicates that "production" was inserted to extend the exemption to additional agricultural activities, such as the extraction of resin, which might not be included by use of words like cultivation, or growing. See H.R. Rep. No. 2738, 75th Cong., 3d Sess. 29. It seems clear to us that production in § 3(f) referred only to agricultural production, and that it was not the intent of Congress to exempt industrial activity necessary to the production of agricultural goods which go into commerce. See Meeker Cooperative Light & Power Ass'n v. Phillips, supra.

The defendant has also argued that the fertilizer here can not be considered goods within the definition of § 3(i) which excludes goods after their delivery into the hands of the ultimate consumer. But whether the farmer is the ultimate consumer of the fertilizer is not relevant here, because if for no other reason the goods for commerce here involved is the sugar, and the defendant's employees are covered by the Act because they are performing work necessary to the production of sugar for commerce.

Defendant's final contention is that an injunction should not issue since it has acted in good faith. This question is not before us, however, since the district judge did not pass on the issue and the question of issuance of an injunction is one for his discretion in the first instance.

The judgment of the District Court is vacated and the cause is remanded for further proceedings not inconsistent with this opinion.