## McCOMB v. FARMERS RESERVOIR & IRRIGATION CO.

No. 3549.

Circuit Court of Appeals, Tenth Circuit.

April 23, 1948.

Rehearing Denied May 25, 1948.

PHILLIPS, Circuit Judge, dissenting.

Reid Williams, Regional Atty., of Kansas City, Mo., and Bessie Margolin,, Asst. Sol., of Washington, D. C. (William S. Tyson, Sol., Morton Liftin and Sidney S. Berman, Attys., U. S. Dept. of Labor, all of Washington, D. C., on the brief), for appellant.

John P. Akolt, of Denver, Colo. (Bancroft, Blood & Law, Frank N. Bancroft, Walter W. Blood, Brock, Akolt & Campbell, and R. A. Dick, all of Denver, Colo., on the brief), for appellee.

Before PHILLIPS, BRATTON and MURRAH, Circuit Judges.

BRATTON, Circuit Judge.

By complaint filed in the United States Court for Colorado, the Administrator of the Wage and Hour Division of the Department of Labor charged that The Farmers Reservoir and Irrigation Company, a corporation, was violating the Fair Labor Standards Act, 52 Stat. 1060, 29 U.S.C.A. § 201 et seq., by failing to pay certain of its employees time and one-half for statutory overtime, and by failing to keep records, as required by the Act. An injunction was sought restraining continued violation. The defendant denied coverage under the Act. Entertaining the view that all of the employees involved except one were engaged in commerce or in the production of goods for commerce, and that all of such employees were engaged in agriculture, the

court dismissed the action; and the administrator appealed.

The facts are not in issue. The company owns, maintains, and operates an irrigation system consisting primarily of four large storage reservoirs, a number of small reservoirs, and from 300 to 400 miles of canals. Approximately 100,000 acres of farm land is irrigated in whole or in part with water furnished by the company. The major portion of the water distributed is diverted from the public streams in Colorado during the non-irrigation season, is run through canals into the reservoirs, is released from the reservoirs, is carried through canals, and is delivered to the laterals of the farmers during the irrigation season. In addition to storage water, the company diverts from the public streams, transports through its canals, and delivers to the laterals of the farmers such other water as is available from time to time. The record title to the land upon which the reservoirs and the canals are located stands in the name of the company; and the company has a vested right fixed by judicial decrees to divert from the streams certain quantities of water as of various priority dates for use in irrigating land by its stockholders or their nominees in growing agricultural crops. The company has 10,500 shares of authorized capital stock, and each share entitles the owner thereof to an equal and pro rata share with every other share of the property of the company and of the available supply of water in the division of the system to which such stock is allocated. Each year the stockholders make an annual assessment upon the outstanding stock of the company for the purpose of raising money necessary to defray the expenses incident to the maintenance and operation of the system and for the payment of the principal and interest on the outstanding bonds of the company. The proceeds of the assessments constitute the sole source of income of the company, with the exception of incidental income from rentals for duck hunting and similar purposes on some of the reservoirs, the receipt of which operates to reduce the amount of the annual assessments. Payment of the assessments is a condition precedent to the right of a stockholder to receive water allocated to his stock. The company does not sell water and does not carry water for hire. It is a mutual ditch company, it does not make a profit, and it does not pay dividends.

The company employs reservoir tenders, ditch riders, an operator of a dragline used in connection with the maintenance and repair of the reservoirs and canals, and common laborers for special maintenance work. The number of such employees ranges from sixteen to approximately twenty-six. The reservoir tenders and ditch riders, collectively and interchangeably, attend the diverting of the water from the streams; attend its storage; attend its conduct through its canals and into the laterals of the farmers; patrol the reservoirs, canals, and other appurtenant structures; and keep the property in good operating order. In numerous workweeks in the year some of the employees work in excess of forty hours and are not paid for the overtime at the rate of one and one-half times their regular pay. Sugar beets, corn, peas, and beans are grown on the land irrigated with water furnished by the company. Virtually all of the sugar beets are processed into refined sugar at plants in Colorado; large parts of the corn, peas, and beans are canned at factories in Colorado; and substantial quantities of the processed products are shipped in interstate commerce.

Taking up the question whether the employees are engaged in the production of goods for commerce, section 3(j) of the Fair Labor Standards Act defines "produced" to mean "produced, manufactured, mined, handled, or in any other manner worked on in any State", and it provides that "an employee shall be deemed to have been engaged in the production of goods if such employee was employed in producing, manufacturing, mining, handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." The purpose of the Act was to eradicate from interstate commerce the evils attendant upon low wages and long hours of service. Being remedial, and having a humanitarian purpose in view, the Act is broad and comprehensive and is to be liberally construed in respect of

coverage. Joseph v. Ray, 10 Cir., 139 F.2d 409; E. C. Schroeder Co. v. Clifton, 10 Cir., 153 F.2d 385, certiorari denied 328 U.S. 858, 66 S.Ct. 1351, 90 L.Ed. 1629; Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52; Lofther v. First National Bank of Chicago, 7 Cir., 138 F.2d 299; Fox v. Summit King Mines, 9 Cir., 143 F. 2d 926; Walling v. Consumers Co., 7 Cir., 149 F.2d 626.

No fixed and unyielding rule has been blueprinted for determining in every case whether an employee is engaged in the production of goods for commerce, within the meaning of the Act. Each case must depend upon its own facts. But there are certain general guides. It is not necessary that the employee come in actual physical contact with the goods produced. It is enough if his work constitutes an essential or useful part of an integrated effort by which goods are produced for commerce. It meets the requirements of the Act if the work of the employee has such "close and immediate tie with the process of production for commerce" that it is in effect a part of it. The criterion is necessarily one of degree. Kirschbaum v. Walling, 316 U. S. 517, 62 S.Ct. 1116, 86 L.Ed. 1638; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Walton v. Southern Package Corp., 320 U.S. 540, 64 S.Ct. 320, 88 L.Ed. 298; Armour & Co. v. Wantock, 323 U.S. 126, 65 S.Ct. 165, 89 L. Ed. 118; Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865, 161 A.L. R. 1258; Roland Elec. Co. v. Walling, 326 U.S. 657, 66 S.Ct. 413, 90 L.Ed. 383; Mid-Continent Pipe Line Co. v. Hargrave, 10 Cir., 129 F.2d 665; Rucker v. First National Bank of Miami, 10 Cir., 138 F.2d 699, certiorari denied 321 U.S. 769, 64 S.Ct. 524, 88 L.Ed. 1065; Walling v. Amidon, 10 Cir., 153 F.2d 159.

Here, certain agricultural commodities are produced on land irrigated with water furnished by the irrigation company. The agricultural commodities are processed and the finished products move in the channels of interstate commerce. Irrigation of the land is necessary in order to produce the agricultural commodities. The employees in question perform physical work which is indispensable to the irrigation of the land. Without their work, the land cannot be irrigated, the agricultural commodities cannot be produced, and therefore no finished products can move in interstate commerce. The relationship of the employees to the production of the finished products which move in interstate commerce is not objectionably remote or tenuous. Instead, their work is vital and essential to the integrated effort which brings about the movement of the finished products in commerce. It is manifestly clear that the employees are engaged in a process or occupation necessary to the production of goods for commerce, within the meaning of the Act. Reynolds v. Salt River Valley Water Users Ass'n., 9 Cir., 143 F.2d 863, certiorari denied 323 U.S. 764, 65 S.Ct. 117, 89 L.Ed. 611; Walling v. Friend, 8 Cir., 156 F.2d 429; Meeker Cooperative Light & Power Ass'n v. Phillips, 8 Cir., 158 F.2d 698; McComb v. Super-A Fertilizer Works, 1 Cir., 165 F.2d 824.

We come now to the question whether the employees, though engaged in a process or occupation necessary to the production of goods for commerce, are exempt from the wage and hour provisions of the Act. Section 3(f) defines "agriculture" to include "farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities * * *, the raising of livestock, bees, fur-bearing animals, or poultry, and any practices * * * performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." And section 13(a) (6) expressly exempts from the wage and hour provisions of the Act all employees employed in agriculture. The definitive provision is broad and should not be restrictively interpreted. Jones v. Gaylord Guernsey Farms, 10 Cir., 128 F.2d 1008. But the exemption provision is to be narrowly construed, due regard being accorded the plain language of the Act and the intent of Congress. Phillips, Inc., v. Walling, 324 U.S.

490, 65 S.Ct. 807, 89 L.Ed. 1095, 15 A.L.R. 876; Fleming v. Hawkeye Pearl Button Co., supra; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11; Miller Hatcheries v. Boyer, 8 Cir., 131 F.2d 283; Helena Glendale Ferry Co. v. Walling, 8 Cir., 132 F.2d 616; Schmidtke v. Conesa, 1 Cir., 141 F.2d 634; Walling v. Bay State Dredging & Contracting Co., 1 Cir., 149 F.2d 346, 161 A.L.R. 825, certiorari denied 326 U.S. 760, 66 S.Ct. 140, 90 L.Ed. 457; Walling v. Consumers Co., supra; West Kentucky Coal Co. v. Walling, 6 Cir., 153 F.2d 582; Walling v. Friend, supra; McComb v. Hunt Foods, Inc., 9 Cir., 167 F.2d 905. And one asserting that its employees are exempt from the wage and hour provisions of the Act has the burden of showing affirmatively that they come clearly within an exemption provision. Walling v. General Industries Co., 330 U.S. 545, 67 S.Ct. 883, 91 L.Ed. 1088; Mid-Continent Petroleum Corp. v. Keen, 8 Cir., 157 F.2d 310; Armstrong Co. v. Walling, 1 Cir., 161 F.2d 515; McComb v. Hunt Foods, Inc., supra.

■ The defendant· is a mutual irrigation company organized under the laws of Colorado, and it is the law of that state that in respect of the imposition of special assessments or the levying of ad valorem taxes a corporation of that kind is to be treated as one organized for the convenience of its members in the distribution to them of their water for use upon their land in proportion to their respective stock interests. Kendrick v. Twin Lakes Reservoir Co., 58 Colo., 281, 144 P. 884; Comstock v. Olney Springs Drainage District, 97 Colo. 416, 50 P.2d 531; Beaty v. Board of County Commissioners of Otero County, 101 Colo. 346, 73 P.2d 982. But local law relating to the imposition of special assessments or the levying of ad valorem taxes is not the test for determining whether the employees of such a corporation are engaged in agriculture within the meaning of section 13(a) (6), supra. To adopt that test would introduce into the statute variations and differences as widely apart as the laws of the several states. Persons engaged in identical work would be within the statute or exempt from its provisions, depending upon the location of their work and the attitude of the particular state. The statute is not expanded to include some employees and limited to exclude others engaged in the same work, depending upon local statutory or judicial concepts. National Labor Relations Board v. Hearst Publications, 322 U.S. 111, 64 S.Ct. 851, 88 L.Ed. 1170.

■ The defendant is a corporate entity, separate and distinct from the farmers to whom it furnishes water for irrigation. Its employees are under its direction and control, and they are engaged in keeping its property in operating condition and in operating its irrigation system. They are not employed by the farmers and are not under their direction or control, are not cultivating or tilling the soil, are not dairying, are not cultivating, growing, or harvesting any agricultural or horticultural commodity, are not raising livestock or poultry, and are not preparing any commodity for market, storage, delivery to storage, delivery to market, or delivery to a carrier for transportation to market. While irrigation activities carried on by a farmer in continuity with other operations of the farm as a link in a chain of events leading to the growing of agricultural commodities and in the subsequent preparation of such commodities for commerce are a part of agriculture within the meaning of the Act, employees of a company engaged in diverting water, storing water, and delivering water to farmers at their laterals for irrigating lands of the farmers, and in keeping the property of the company in operating condition, all separate and distinct from the farming operations of the farmers, are not engaged in agriculture within the intent and meaning of section 13(a) (6), supra. McComb v. Super-A Fertilizer Works, supra.

■ Section 13(a) (1) provides in presently material part that the wage and hour provisions of the Act shall not apply to any employee employed in a bona fide executive, administrative, or professional capacity, as such terms are defined and delimited by regulations of the Administrator; and Regulation 541, promulgated under the Act, provides among other things that the term "employee employed in a bona fide * * * administrative * * * capacity" shall

mean an employee who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month, exclusive of board, lodging, or other facilities. At the time of the institution of the action and at the time of the entry of the judgment, the bookkeeper and accountant of the company was paid a salary of $190 per month. Since then his salary has been increased to $210 per month. The contention of the Administrator that the company should be enjoined from further violation of the Act in the future by failing to compensate him for overtime is now moot and therefore does not call for discussion.

The judgment is reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

PHILLIPS, Circuit Judge (dissenting).

Under the doctrine of prior appropriation and application to beneficial use of water for irrigation, three types of property arise. The first is the property right in the flow or use of water, known as the usufructuary, or water right, which is the right to divert water from a natural stream by artificial means and apply it to beneficial use. It is real property and is appurtenant to the land upon which the water is applied to beneficial use. The second is the property right in the physical works by which the water is diverted, stored, and delivered to the land on which it is beneficially used. Such works are real property. The right-of-way upon which they rest is an easement and an incorporeal hereditament. The third is captured water, which, when captured by one having the right to appropriate it, is personal property of the taker. See Murphy v. Kerr, D.C.N.M., 296 F. 536, and cases there cited.

Here, the Farmers Reservoir and Irrigation Company, hereinafter called the Farmers Company, is a mutual ditch company organized not for profit, but for the convenience of its members. While it holds the legal title to the physical works by which waters are diverted, impounded, and carried, it holds such title as trustee for its members, who own the beneficial title to the physical works and the water rights appurtenant to their land.[1] The Farmers Company is, in substance, a mutual agency of the owners of the water rights, created to divert, store, and carry water to the lands to which such rights are appurtenant. Its employees are, in substance, the employees of the landowners. Their compensation is paid from assessments paid by the landowners. The Farmers Company makes no profit. It owns the beneficial title to no property. It is nothing more than a mutual agency organized for the convenience of the owners of land and appurtenant water rights. It is in no sense an independently operated irrigation corporation.

In the semi-arid regions of the west, irrigation is essential to the production of crops. The application of water for irrigation is just as essential as the preparation of the seed-bed, the sowing and planting, the cultivation, and the harvesting. One who performs services in carrying water from its source to the lands on which it is beneficially applied, performs a service just as essential and important in the production of crops as one who prepares the seed-bed, sows or plants, cultivates, or harvests.

In the case of Big Wood Canal Co. v. Unemployment Comp. Division, 61 Idaho 247, 100 P.2d 49, 50, the Supreme Court of Idaho passed on the question of whether employees of the Big Wood Canal Company, a mutual nonprofit organization, engaged in the maintenance of the physical works and the diversion, storage, and carrying of water for irrigation purposes to the lands to which the water rights were appurtenant, came within the phrase "agricultural labor," as used in the Unemployment Compensation Act of Idaho. The court, speaking through the late Justice Ailshie, for many years a distinguished member of that court, said:

"It is just as essential to have canals, ditches, flumes, and laterals for the de-

[1] Comstock v. Olney Springs Drainage Dist., 97 Colo. 416, 50 P.2d 531, 532; Beaty v. Board of County Com'rs of Otero County, 101 Colo. 346, 73 P.2d 982, 985; Kendrick v. Twin Lakes Reservoir Co., 58 Colo. 281, 144 P. 884; Ireton v. Idaho Irr. Co., 30 Idaho 310, 164 P. 687; Pacific States Savings & Loan Corp. v. Schmitt, 9 Cir., 103 F.2d 1002, 1004.

livery of water to the land, as it is to have the land in order to grow crops. The land must be cleared and prepared and the water must be captured, impounded, delivered, and distributed over the land; and when that is done, with proper cultivation, crops may be confidently expected. Irrigating the land is as much 'agricultural labor' as is the plowing, grading, and cultivating the land after it is cleared of the sagebrush and greasewood. In the arid regions of the west, water is the vitalizing element of agriculture. The waters delivered by the Big Wood Canal Co. were impounded solely for agricultural purposes and the whole volume so impounded and delivered was appurtenant to the farms, I.C.A., sec. 41-1725, cultivated by the farmers who own the land and hold the water certificates.

"The fact, that the reservoirs or impounding works are many miles distant from the farms to which the water belongs and is delivered through intervening canals, renders the labor necessary for its storage and delivery no less 'agricultural labor.' The farmer who goes to the warehouse 20 miles away for a load of fertilizer, or a load of seed, does not by those acts lose his character or designation as a farmer or one engaged in 'agricultural labor.' The fact, that the Big Wood Canal Co. employs and pays the men who tend and maintain the reservoirs and canals, and measure and deliver the water to the farmers, renders them no less laborers in the interest and field of agriculture, since the entire maintenance and operating expense is charged up to and prorated among the various farms and tracts of land to which the water is delivered as an appurtenance. See I.C.A., secs. 41-901, 41-101; Taylor v. Hulett, 15 Idaho 265, 97 P. 37, 19 L.R.A.,N.S., 535, 538; Sanderson v. Salmon River Canal Co., 45 Idaho 244, 270, 263 P. 32. The Big Wood Canal Co. is not a profit-making corporation; it is merely a medium or instrumentality created to represent the farmers owning water rights from the reservoirs and is doing for them what each one can not do alone for himself."

Here, as in the Idaho case, all of the water is exclusively used for agricultural purposes.

I think there could be little doubt that an employee of a farmer engaged in transporting fertilizer from a source of supply to the farm, or engaged in transporting seed from a source of supply to the farm, would be engaged in agriculture. Here, as I have indicated, I think the employees of the ditch company are, in substance, the employees of the farmers. They, likewise, are engaged in transporting water from its source to the farms, and are performing a service of imperative necessity to the production of crops on the farms.

The original Social Security Act, 49 Stat. 620, 625, in excluding agricultural labor from the term "employment" in § 210(b) of the Act, did not define the phrase "agricultural labor." Later, because of administrative rulings, Congress amended the Act by providing that it should include services performed "in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways used exclusively for supply and storing water for farming purposes." 53 Stat. 1373, 42 U.S.C.A. § 409 (l) (3).

That action by Congress, it seems to me, throws some light on its intent with respect to the term "agriculture" used in the Fair Labor Standards Act.

Reynolds v. Salt River Valley Water Users Ass'n, 9 Cir., 143 F.2d 863, seems to me to be clearly distinguishable on the facts. There, the Association operated a water and electric system for the supplying of irrigation water and power in Central Arizona. Its system consisted of 5 large storage dams, 2 diversion dams, 8 hydroelectric plants, 1 steam plant, 1 Diesel plant, 1,400 miles of canals and laterals, hundreds of miles of power lines, 200 deep well pumps, and other plants and equipment necessary for the operation of a water and electric utility. It had an investment of $2,300,000 in power plants. Its employees, in addition to supplying water to farmers, were engaged in the production and transportation of electric energy for industrial purposes for profit. It was a profit-making corporation and engaged in the production and transportation of electric energy as well as in the diversion, storage, and carrying of water. Here, we have a mutual

ditch company engaged, as an instrumentality of the landowners, in the maintenance and operation of ditches, canals, and reservoirs used exclusively for diverting, storing, and supplying water for agricultural purposes.

It is my opinion that the employees of the ditch company here involved, other than the bookkeeper, were engaged in practices "performed by a farmer * * * as an incident to or in conjunction with" farming operations and were within the meaning of the term "agriculture," as defined in 29 U.S.C.A. § 203(f), and were exempted from the coverage of the Act by 29 U.S.C. A. § 213(a) (6).

For the reasons indicated, I respectfully dissent.