**Raymond J. DONOVAN,\* Secretary of Labor United States Department of Labor**

v.

**FREZZO BROTHERS, INC., and Frezzo, Guido, Individually and as a corporate officer and Frezzo, James, Individually and as a corporate officer, Appellants.**

No. 81–2405.

United States Court of Appeals, Third Circuit.

Argued March 29, 1982.

Decided May 20, 1982.

As Amended June 1, 1982.

Rehearing and Rehearing In Banc Denied June 24, 1982.

\* Formerly *Marshall v. Frezzo Brothers, et al.*   —No. 81–2405.

Charles J. Bloom (argued), Hunt, Kerr, Bloom & Hitchner, Philadelphia, Pa., for appellants.

T. Timothy Ryan, Jr., Sol. of Labor, Beate Bloch, Associate Sol., Mary-Helen Mautner, Barbara E. Kahl (argued), Attys., Marshall H. Harris, Regional Sol., U. S. Dept. of Labor, Washington, D. C., for appellee.

Before GIBBONS, SLOVITER and BECKER, Circuit Judges.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Frezzo Brothers, Inc. (Frezzo), appeals from a permanent injunction directing it to pay overtime wages to its employees under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq. (1976).

On January 17, 1979, the Secretary of Labor filed a complaint against Frezzo Brothers, alleging that it had violated the FLSA by failing to pay overtime wages to employees engaged in the process of preparing compost for growing mushrooms and by failing to maintain records as required by the FLSA. Frezzo contended that employees in its mushroom composting operation were exempt from the FLSA's overtime

pay requirements, pursuant to a statutory exemption for employees employed in agriculture. 29 U.S.C. § 213(b)(12) (Supp. 1980).[1] After a three day trial on January 19, 20 and 21, 1981, which included a tour of Frezzo's operation, the parties reached a consent judgment regarding the alleged record keeping violations. As to the overtime pay claim, the District Court on June 12, 1981 concluded that the preparation of mushroom compost was not agriculture within the meaning of the FLSA. The District Court based this conclusion on its finding that preparation of mushroom compost is neither cultivation or tillage of the soil; the production, cultivation, growing and harvesting of an agricultural commodity; nor a practice incident to farming. The District Court permanently enjoined Frezzo from violating the overtime compensation provisions of the FLSA and directed it to pay $67,363.01 in back wages and interest to its employees. On July 20, 1981 Frezzo appealed. We affirm.

## I.

Frezzo's business consists of two operations—production and sale of mushroom compost, and mushroom growing. The two operations are physically separate and done by two different groups of employees. The process of growing commercial mushrooms consists of several distinct steps. Mushrooms are grown in the dark in concrete block "mushroom houses." Mushrooms do not manufacture their own food, and therefore must be grown in compost, a medium which provides nutrients. Once mushroom compost is prepared, it is placed in the mushroom houses on wooden beds and then pasteurized. Following pasteurization, mushroom spawn is injected into the mushroom compost. Once the spawn is injected, it is allowed to run through the growing

medium. A casing layer is then applied, which dramatically increases mushroom yields. Within several weeks, harvesting of the mushroom crop begins.

Mushroom compost is produced over a two week period from a variety of materials, including horse and chicken manure, corn-cobs, hay and cocoa shells. Once the raw materials are assembled, they are moved with a front end loader into a compost turning machine. Water is added, and approximately every three days the pile is turned. Heat is generated by the micro-flora present in the compost pile and the temperature ranges from 140 to 170 degrees. Near the end of the composting, gypsum is added to increase aeration and reduce greasiness, reduce the Ph level, retain nitrogen in the pile and to act as a nutrient for the mushrooms. During the two weeks of the composting process, the raw materials are biologically, physically and chemically changed into Frezzo's product—mushroom compost. Frezzo sells ninety percent of the compost it produces to other mushroom growers and retains ten percent for its own use.

The sole issue before the court on this appeal is whether Frezzo's production of mushroom compost constitutes agriculture within the meaning of the exemption to the FLSA. If it does, then Frezzo's employees engaged in compost production are not entitled to collect premium overtime pay.

## II.

The FLSA broadly defines agriculture as including "farming in all its branches," which in turn includes the "cultivation and tillage of the soil, dairying, the production, cultivation, growing and harvesting of any agricultural or horticultural commodities . . . and any practice performed by a farm-

---

1. 29 U.S.C. § 213(b)(12) provides that § 207 of the FLSA, which requires an employer to pay one and one-half times an employee's regular pay for a work week longer than forty hours, shall not apply to:

(12) any employee employed in agriculture or in connection with the operation or maintenance of ditches, canals, reservoirs, or waterways, not owned or operated for profit, or operated on a share crop basis, and which

er or on a farm as an incident to or in conjunction with such farming operations. . . ." 29 U.S.C. § 203(f).[2] This definition is divided into two parts: "primary" agriculture, which includes all activities which are actually farming, and "secondary" agriculture, which includes activities incident to or in conjunction with the primary farming operation of a particular farmer. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 762–63, 766 n.15, 69 S.Ct. 1274, 1278, 1280, 93 L.Ed. 1672 (1949).

Frezzo contends that the District Court erred as a matter of law in concluding that mushroom compost is neither soil nor an agricultural commodity and therefore not primary agriculture.[3] Attempting to draw an analogy between traditional green crop farming and mushroom growing, Frezzo argues that mushroom compost serves the same function as the earth in which crops are grown, and just as plowing and preparing a seed bed is farming, so is the preparation of mushroom compost. We reject this analogy and agree with the District Court that, although mushroom growing is a type of farming, the production of mushroom compost is a preliminary activity which manufactures a product that is then used in farming.

are used exclusively for supply and storing of water for agricultural purposes.

2. In its entirety, the agricultural exemption provides:
Agriculture includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, and production, cultivation, growing and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in Section 1141j(g) of Title 12), the raising of livestocks, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carrier for transportation to market.
29 U.S.C. § 203(f).

3. The District Court conceded that mushroom compost is produced "as an incident to or in conjunction with" the growing of mushrooms

**A.**

The District Court concluded that the proper inquiry in determining whether preparation of mushroom compost fits within the statutory language of "cultivation and tillage of the soil" is whether mushroom compost is itself soil. 433a. Relying on the administrative interpretation of that phrase contained in 29 C.F.R. § 780.110, the District Court decided that Congress meant the term "soil" to have its regular meaning of earth, dirt or the ordinary material in which growing occurs. 439a. The regulation defines cultivation and tillage of the soil as including "all the operations necessary to prepare a suitable seedbed, eliminate weed growth, and improve the condition of the soil." Thus, the regulations state, grading or leveling land, removing rock or adding fertilizer are all included, but other operations such as the production and distribution of fertilizer are not. *Id.* Frezzo argues that since mushrooms are concededly an agricultural commodity, and since the Department of Labor's regulations divide agricultural commodities into two classes, products of the soil and domesticated animals, the Department of Labor must have interpreted the Congressional use of the word "soil" to encompass more than earth or dirt. The Secretary of Labor on the other hand, argues that mushroom com-

in general. The District Court found, however, that the statutory definition of secondary agriculture requires that the claimed exempt activity be "incident to or in conjunction with" the same farmer's primary agricultural activities. Since Frezzo sells ninety percent of its compost to other farmers and only ten percent is used in its own mushroom farming operation, the District Court rejected Frezzo's claim that production of mushroom compost is within the secondary definition of agricultural. There is support for this interpretation of the statute in the Department of Labor's administrative regulations, 29 C.F.R. § 780.137, and in caselaw. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 766 n.15, 69 S.Ct. 1274, 1280, 93 L.Ed. 1672 (1949); *Hodgson v. Wittenburg*, 464 F.2d 1219, 1222 (5th Cir. 1972); *Mitchell v. Hunt*, 263 F.2d 913, 916–17 (5th Cir. 1959). However, since Frezzo did not appeal the District Court's decision on this issue, we have no occasion to address it.

post is a "soilless" growing medium. We agree with the Secretary that preparation of mushroom compost does not constitute the cultivation and tillage of the soil.

Although there is a certain surface logic to Frezzo's position, it is too narrowly constructed. First, the section of the administrative regulations relied upon by Frezzo nowhere states that products of the soil and domesticated animals are the two sole categories of agricultural commodities. Bean sprouts, like mushrooms, are an obvious example of an item considered by the Secretary to be an agricultural commodity and yet fitting into neither category. *See* 29 C.F.R. § 780.113. Thus, Frezzo can glean no support for its position from the Labor Department's administrative regulations.

■ Second, as both parties agree, none of the ingredients of mushroom compost, which include manure, cocoa shells and hay, could accurately be termed soil. The end product, although in a very different form than the raw ingredients, is still not within the standard definition of soil. *See,* Black's Law Dictionary 1563 (1968), Webster's New Collegiate Dictionary 1105 (1976). Frezzo's expert witness admitted at trial that preparation of mushroom compost did not fit within the traditional or conventional use of the phrase "cultivation and tillage of the soil." The expert testified that composting was the equivalent of "cultivating a mass of material." 329a. Thus, in order to include mushroom composting within the meaning of "cultivation and tillage of the soil" we would have to give that phrase an unorthodox meaning. We decline to do so, and agree with the Secretary that where Congress leaves a statutory term undefined, that term should be given its ordinary and common sense meaning. *E.g., United States v. Elledge,* 614 F.2d 247, 250 (10th Cir. 1980). Here, we interpret the term "soil" to mean earth, land and the ordinary material in which growing takes place and find that mushroom composting is not, therefore, the equivalent of cultivation and tillage of the soil.

### B.

We next consider Frezzo's claim that the district court erred in deciding that the process of mushroom composting does not constitute the production, cultivation, growing or harvesting of an agricultural commodity. There is no dispute that the growing of mushrooms is the growing of an agricultural commodity; what appellants challenge is the District Court's determination that the term does not include mushroom compost.

■ The administrative regulations define agricultural or horticultural commodities generally as commodities resulting from the application of agricultural or horticultural techniques. Insofar as the term refers to products of the soil, it means commodities that are planted and cultivated by man. The term also includes domesticated animals and some of their products, but does not include commodities produced by industrial processes or techniques. 29 C.F.R. § 780.112. The regulations draw a distinction between producing and processing an agricultural commodity. The words "production, cultivation, growing" refer to "actual raising operations which are normally intended or expected to produce specific agricultural or horticultural commodities." 29 C.F.R. § 780.117. Preliminary or preparatory operations are not included, nor are operations such as grinding and processing of sugarcane, milling of wheat into flour or making of cider from apples, which are "clearly the processing of the agricultural commodities and not the production of them." *Id.* While these administrative regulations do not have the force of binding law, except in cases of flagrant abuse we should defer to them based on the expertise and experience of the administrative agency which promulgated them. *See e.g., Mabee v. White Plains Publishing Co.,* 327 U.S. 178, 182, 66 S.Ct. 511, 513, 90 L.Ed. 607 (1946); *Skidmore v. Swift & Co.,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944); *Dunlop v. State of New Jersey,* 522 F.2d 504, 509 (3d Cir. 1975), *vacated on other grounds,* 427 U.S. 909, 96 S.Ct. 3196, 49 L.Ed.2d 1202 (1976); *Goldberg v. Sorvas,* 294 F.2d 841, 847 (3d Cir. 1961).

We think that mushroom compost is more appropriately described as a commodity produced by an industrial process or technique rather than as an agricultural commodity. Mushroom composting involves the use of heat and moisture to biologically, physically and chemically alter the ingredients into a changed product—compost. Neither mushroom compost nor its ingredients, as we have seen, constitutes soil or a product of the soil. We find that the composting process is "more akin to manufacturing than to agriculture." *Mitchell v. Budd*, 350 U.S. 473, 482, 76 S.Ct. 527, 532, 100 L.Ed. 565 (1955).

In *Mitchell v. Budd*, the Supreme Court considered whether employees engaged in "bulking" of tobacco were employed in agriculture. The Court decided that they were not:

> [T]he bulking operation is a process which changes the natural state of the freshly cured tobacco as significantly as milling changes sugar cane. As indicated above, the bulking process changes and improves the leaf in many ways and turns it into an industrial product. ... [A] process that results in such important changes is "more akin to manufacturing than to agriculture."

*Id.* at 481–82, 76 S.Ct. at 532.

Frezzo concedes that the only authority for its position that mushroom compost is an agricultural commodity is two cases decided under different statutes. In the first, *Kaolin Mushroom Farms, Inc. v. United States*, 1979–2 CCH Tax Cas. ¶ 9652 (E.D. Pa.1979), the District Court interpreted the agricultural exemption in the Federal Insurance Contributions Act (FICA) of the Internal Revenue Code. Under that exemption, employers are not required to withhold income and social security taxes from employees working in agriculture. The definition of agriculture requires that the work be on a farm and in connection with raising any agricultural commodity. 26 U.S.C. § 3121(g). The statutory definition of farm includes "structures used primarily for the raising of agricultural commodities." *Id.* The District Court in *Kaolin Mushroom Farms* decided that mushroom composters could claim the exemption either because compost was itself an agricultural commodity or because composting activity is carried out in connection with the mushroom growing process. Frezzo also relies on a decision by the Supreme Court of Pennsylvania, *Gaspari v. Township of Muhlenberg*, 392 Pa. 7, 139 A.2d 544 (1958), which held that for purposes of a local zoning ordinance, production of mushroom compost was not manufacturing, but was "farming in all its branches." In that zoning ordinance, "farming in all its branches" was defined as including the erection of accessory farm buildings and marketing or processing of farm products where incidental to raising those products. Composting was, under the definition, declared to be a part of farming.[4]

As the parties agree, the question whether mushroom compost is an agricultural commodity is not an issue of fact which is susceptible of the same determination in every case. To the contrary, it is an issue of law which must be decided by examining the statutory definition of agriculture contained in the statute in question. We do not consider constructions of a tax statute and a local zoning ordinance, which involve different statutory language, purposes and

---

4. Appellants also rely on this court's decision in *United States v. Frezzo Brothers, Inc.*, 642 F.2d 59 (3d Cir. 1981), which reversed the denial of post-conviction relief from Frezzo's conviction for discharging pollutants into navigable waters without a permit, in violation of the Federal Water Pollution Control Act Amendments of 1972 (FWPCA), 33 U.S.C. §§ 1311(a), 1319(c) (1976). This Court remanded the case to the district court to consider whether the manufacture of mushroom compost was agricultural and therefore exempt from the permit requirements of the FWPCA. Frezzo argues that this court's remand "lends weight to the proposition ... that mushroom compost preparation is properly considered to be agricultural." (Appellant's Brief at 38).

Appellants' reliance on *United States v. Frezzo Brothers, Inc.* is misplaced. The Court expressed no view on whether the FWPCA's agricultural exemption applied, but simply remanded so the district court could consider the issue after development of a full record.

policies, to be determinative of our interpretation of the FLSA. Accordingly, we hold that mushroom compost is not an agricultural commodity within the meaning of the FLSA.

### C.

█ Finally, we turn to Frezzo's claim that, if mushroom composting is neither cultivation and tillage of the soil nor an agricultural commodity, it fits within the general language "farming in all its branches" contained in 29 U.S.C. § 203(f).

In decisions discussing the general scope of the statutory agricultural exemption, the Supreme Court has said that the key determinant is the way in which that activity is organized in a particular society. *Farmers Reservoir & Irrigation Co. v. McComb*, 337 U.S. 755, 760–61, 69 S.Ct. 1274, 1277, 93 L.Ed. 1672 (1948).

> Thus, the question as to whether a particular type of activity is agricultural is not determined by the necessity of the activity to agriculture nor by the physical similarity of the activity to that done by farmers in other situations. The question is whether the activity in the particular case is carried on as part of the agricultural function or is separately organized as an independent productive activity.

*Id.* at 761, 69 S.Ct. at 1278. *See also, Wirtz v. Ti Ti Peat Humus Co.*, 373 F.2d 209, 213 (4th Cir.), *cert. denied*, 389 U.S. 834, 88 S.Ct. 37, 19 L.Ed.2d 94 (1967); *McComb v. Super-A Fertilizer Works*, 165 F.2d 824, 828 (1st Cir. 1948). The Labor Department's regulations describe "farming in all its branches" as including "all activities, whether listed in the definition or not, which constitute farming or a branch thereof under the facts and circumstances." 29 C.F.R. § 780.107. The regulations further state that, in making the determination whether an activity is farming,

> it may be necessary to consider various circumstances such as the nature and purpose of the operations of the employer,

the character of the place where the employee performs his duties, the general types of activities there conducted, and the purpose and function of such activities with respect to the operations carried on by the employer. ·

29 C.F.R. § 780.109. Frezzo does not argue that the Labor Department's interpretation of the statute in its regulation is incorrect; rather, it urges that, under the regulations, the "preparation of mushroom compost constitutes agriculture under the facts and circumstances of mushroom farming as a unique branch of farming." (Appellants' Brief at 33). We disagree, and find that Frezzo's composting operation is a separately organized productive activity, which, although necessary to mushroom growing, does not itself fall within the meaning of "farming in all its branches."

The facts as found by the District Court and not disputed here reveal that there is a clear and complete division between Frezzo's composting and growing operations. At trial, Frezzo stipulated that none of the employees engaged in preparation of compost worked inside the mushroom houses in any respect with regard to the planting, growing or harvesting of mushrooms. 34a–35a. The District Court found that the employees whose activities are at issue drive trucks and operate heavy machinery for shoveling, mixing, watering and aerating the compost and ultimately deliver 90% of it to other mushroom growers in the same and other communities. 430a–431a. Frezzo also stipulated that none of its employees who work inside the mushroom houses operated front end loaders or other equipment involved in the composting operation. 36a. Thus, Frezzo employs two distinct groups of employees who engage in different activities. The fact that all these employees are employed by a single corporation and that some activities of that corporation are exempt is irrelevant. *E.g., Maneja v. Waialua Agricultural Co.*, 349 U.S. 254, 75 S.Ct. 719, 99 L.Ed. 1040 (1955)[5];

---

**5.** In *Maneja v. Waialua Agricultural Co.*, the Supreme Court decided that the agricultural exemption did not apply to sugar cane processing. Frezzo attempts to distinguish mushroom composting from sugar cane processing by pointing out that composting is a "pre-harvest

*Brennan v. Six Flags Over Georgia, Ltd.,* 474 F.2d 18 (5th Cir.), *cert. denied,* 414 U.S. 827, 94 S.Ct. 47, 38 L.Ed.2d 61 (1973); *Calaf v. Gongalez,* 127 F.2d 934, 937–38 (1st Cir. 1942).

Finally, we are dealing with an explicit Congressional exemption to the FLSA and as such, its terms must be narrowly construed. *E.g., Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960); *Mitchell v. Kentucky Finance Co.,* 359 U.S. 290, 295, 79 S.Ct. 756, 3 L.Ed.2d 815 (1959); *Wirtz v. Ti Ti Peat Humus Co.,* 373 F.2d 209, 212 (4th Cir.), *cert. denied,* 389 U.S. 834, 88 S.Ct. 37, 19 L.Ed.2d 94 (1967). Although the legislative history of the FLSA reveals that Congress meant the agricultural exemption to be broad, *see, e.g.,* 81 Cong.Rec. 7648 (Remarks of Senator Black), application of the exemption is limited to situations which "plainly and unmistakably come within the statute's terms and spirit." *Arnold v. Ben Kanowsky, Inc., supra,* 361 U.S. at 392, 80 S.Ct. at 456. As the Supreme Court has said:

> The exemption was meant to embrace the whole field of agriculture, and sponsors of the legislation so stated, 81 Cong.Rec. 7648, 7658. This Court also has had occasion to comment on its broad coverage. *See Addison v. Holly Hill Co.,* 322 U.S. 607, 612 [64 S.Ct. 1215, 1218, 88 L.Ed. 1488] (1944). Nevertheless, no matter how broad the exemption, it was meant to apply only to agriculture and we are left with the problem of what is and what is not properly included within that term.

*Maneja v. Waialua Agricultural Co., supra,* 349 U.S. at 260, 75 S.Ct. at 723. Under the FLSA, the employer bears the burden of demonstrating that an exemption applies. *Walling v. General Industries, Inc.,* 330 U.S.

545, 547–48, 67 S.Ct. 883, 883–84, 91 L.Ed. 1088 (1947); *Usery v. Associated Drugs, Inc.,* 538 F.2d 1191, 1194 (5th Cir. 1976). We find that Frezzo did not carry that burden. Accordingly, the decision of the District Court will be affirmed.

EDWARD R. BECKER, Circuit Judge, dissenting:

I dissent because the majority's result, however well-intentioned, ignores the import of the trial court's factual findings, established principles of statutory construction, and the congressional intent to protect farmers from burdensome economic regulation. For the reasons stated below, I believe that appellants' composting operation falls "plainly and unmistakably" within the terms and spirit of the agricultural exemption and accordingly would find that the district court erred as a matter of law in holding the exemption inapplicable to this case. *See Arnold v. Ben Kanowsky, Inc.,* 361 U.S. 388, 392, 80 S.Ct. 453, 456, 4 L.Ed.2d 393 (1960).

I need not address the majority's first conclusion—that the preparation of mushroom compost falls outside the statutory language of "cultivation and tillage of the soil." It is enough to conclude, as I do, that the process of mushroom composting constitutes the production or cultivation of an agricultural commodity and that, in any event, it is a part of "farming in all its branches."

I approach the question of whether mushroom composting falls within the agricultural exemption with a functional analysis.[1] That analysis is quite simple and proceeds from the following undisputed facts in this record:

(1) Compost is prepared solely from organic and agricultural products (horse

---

function" while cane processing occurs "post-harvest." (Appellants' Brief at 47). The *Maneja* opinion does not discuss the timing of the processing operation at issue there as a factor in its decision that the agricultural exemption did not apply and we fail to see its relevance to our decision in this case.

**1.** This functional analysis is consonant with the Department of Labor's guidelines. For exam-

ple, whether an activity constitutes "farming in all its branches" depends upon "the nature and purpose of the operations of the employer, the character of the place where the employee performs his duties, the general types of activities conducted, and the purpose and function of such activities with respect to the operations carried on by the employer." 29 C.F.R. § 780.-109 (1981).

manure, hay, corncobs, chicken manure, and cocoa bean hulls).[2]

(2) These raw materials are converted into compost entirely by natural microbiological forces. Adequate oxygen, moisture, and temperature levels in the compost pile are controlled, not by gauges or other scientific paraphernalia, but by the human eye, in a technique no more sophisticated than others used in the art of traditional farming.

(3) Compost is and always has been the exclusive seed bed and growing medium for commercial mushrooms. Because mushrooms do not manufacture food and energy from photosynthesis, their growth depends wholly upon the nutrients contained in compost. The cultivation and tillage of compost consists of the same principal components (aeration and watering) as the tillage and cultivation of soil for green crops. Compost, at least in the context of mushroom farming, is thus the functional equivalent of soil itself.

(4) Mushroom composting takes place outdoors on what looks like a farm, located in the midst of farming country.

(5) Mushroom composting operations are seasonal to the same extent as mushroom growing. Fully-cured mushroom compost must be used within several days and cannot be inventoried for use or sale as needed.

Whether a function of logic or common sense, it is clear to me, in light of these salient and uncontested facts of record, that the preparation of mushroom compost is an agricultural process. That process begins with natural ingredients, continues through the decomposition process caused by the interaction of microorganisms and microflora, and ends with a substance used as the growing medium for mushrooms. From this observation it is but a short and obvious step to the conclusion that compost is an agricultural commodity as defined by the Department of Labor. According to the Department's regulations, "within the meaning of the Act, 'agricultural or horticultural commodities' refers to commodities resulting from the application of agricultural or horticultural techniques." 29 C.F.R. § 780.112. I am unable to conceive of a more conspicuous example of an agricultural technique than the process described in this record.

Conversely, the majority's efforts to analogize composting to the mechanical processes which transform apples into cider or wheat into flour and its conclusion that composting is "more akin to manufacturing than to agriculture" ring hollow.[3] The infirmity of the manufacturing comparison was recognized years ago by the Pennsylvania Supreme Court in *Gaspari v. Muhlenberg Twp.*, 392 Pa. 7, 139 A.2d 544 (1958). Faced with categorizing mushroom composting as farming or manufacturing, the court concluded that the decomposition of agricultural ingredients through a bacteriological process leading to the formation of mushroom compost bears no resemblance to a manufactured article, "which comes into being through human and mechanical manipulation of raw materials which in themselves are not active partners in the transforming and creative process." 392 Pa. at 14, 139 Pa. A.2d at 548 (Musmanno, J.). This reasoning applies with equal force to the present case.

The majority's view appears to be influenced by the mechanization of appellants' mushroom composting operation which, for example, permits the compost heaps to be turned by machine rather than by hand. But such a subliminal attitude runs counter to the Supreme Court's admonition that the FLSA exemption does not distinguish be-

---

**2.** Agricultural gypsum, which is naturally occurring though inorganic, is utilized only as a supplement.

**3.** I note that the district court did not go so far as to suggest the manufacturing analogy, concluding only that compost is not an agricultural commodity because it is not a product of soil.

However, even this finding ignores the broader definition of agricultural commodity quoted above. I agree with appellants that this definition embraces more than "products of soil" because mushrooms themselves, conceded to be agricultural commodities, are products of compost, not soil.

tween mechanized and non-mechanized agriculture. *Maneja v. Waialua Agricultural Company, Ltd.,* 349 U.S. 254, 261, 75 S.Ct. 719, 724, 99 L.Ed. 1040 (1955).[4] The majority's apparent concern with this characteristic improperly penalizes appellants for their efficiency and resulting productivity.

In the alternative, the undisputed facts set forth above make it clear that the preparation of mushroom compost is part of "farming in all its branches." Indeed, given the unique features of mushroom cultivation, appellants' composting is inextricably intertwined both temporally and geographically with their mushroom growing, which the Secretary of Labor concedes is agricultural. The majority acknowledges that mushroom composting is necessary to appellants' mushroom farming yet removes the process from the sphere of "farming in all its branches" because it is separately organized. With all respect, reliance on this criterion is inapposite. The Supreme Court has used the concept of a "separately organized and independent productive activity" to disallow the agricultural exemption for operations claimed to be within the statutory definition of a practice incident to farming.[5] But appellants do not here assert this secondary meaning of agriculture, and the organizational test should not be invoked to defeat the uncontradicted factual evidence that mushroom composting is agriculture within the primary definition of "farming in all its branches."[6] In sum, to conclude that composting is not part of farming because it is separate from another

farming operation of the same owners simply begs the question.

Contrary to the implication of the majority, the conclusion that composting is part of agriculture is supported by familiar principles of statutory construction and by the legislative history explicating the scope of the agricultural exemption. The Supreme Court has stated repeatedly that, "in any case concerning the interpretation of a statute the 'starting point' must be the language of the statute itself." *See, e.g., Lewis v. United States,* 445 U.S. 55, 60, 100 S.Ct. 915, 918, 63 L.Ed.2d 198 (1980). Both the district court and the majority rely heavily upon certain discrete provisions of the statute and certain Department of Labor regulations which attempt to catalogue agricultural activity. But the Act is not susceptible to fragmentization, for "in construing a statute we are obliged to give effect, if possible, to every word Congress used," *Reiter v. Sonotone Corp.,* 442 U.S. 330, 339, 99 S.Ct. 2326, 2331, 60 L.Ed.2d 931 (1974), including the phrase "farming in all its branches." These words, according to another axiom of construction, "must be given their ordinary meaning in the absence of persuasive reasons to the contrary." *Burns v. Alcala,* 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184, 43 L.Ed.2d 469 (1975). The functional analysis previously described demonstrates that the composting process is part of "farming" in the ordinary meaning of that word. Moreover, the phrase "in *all* its branches" affords sufficient latitude to encompass an activity such as mushroom composting which is not specifically enu-

---

**4.** Holding that workers who carry sugar cane from the fields by railroad were within the definition of agriculture, the Court reasoned that, if farm laborers who carried the cane in wheelbarrows would be exempt, so, too, should these railroad workers notwithstanding the use of an "extraordinary method" of transportation. As the Court noted, "[t]here is no reason to construe the FLSA so as to discourage modernization in performing this same function." 349 U.S. at 261, 75 S.Ct. at 724.

**5.** In *Farmers Reservoir & Irrigation Co. v. McComb,* 337 U.S. 755, 69 S.Ct. 1274, 93 L.Ed. 1672 (1949), the Court denied the exemption on this basis to an irrigation company divorced from the farming operation whose functions

were performed neither on a farm nor by a farmer. The same criterion precluded the agricultural exemption in *Maneja v. Waialua Agricultural Company, Ltd., supra,* with respect to work performed in a sugar processing plant located on a sugarcane farm, and in *Mitchell v. Budd,* 350 U.S. 473, 76 S.Ct. 527, 100 L.Ed. 565 (1956), with respect to the "bulking" of tobacco leaves after harvest.

**6.** Appellants argued at trial that mushroom composting is a practice incident to its mushroom growing operations. The district court rejected this contention because the majority of the compost is sold to other mushroom farmers. Appellants did not appeal this finding.

merated in the statutory definition of agriculture.

This interpretation enjoys further support by reference to the legislative history of the FLSA. As the majority has noted, Congress intended this exemption to be as broad as possible. The author of the Senate bill explained: "It specifically excludes workers in agriculture of all kinds and of all types. There is contained in the measure, perhaps, the most comprehensive definition of agriculture which has been included in any one legislative proposal." 81 Cong.Rec. 7648 (1937) (remarks of Senator Black). Even accepting the premise that exemptions to the Fair Labor Standards Act must be narrowly construed, I am unable to formulate a narrow construction of the phrase "agriculture of *all* kinds and of *all* types." The unduly restrictive compass accorded by the majority to the exemption for agriculture thus contravenes the legislative intent as well as established canons of statutory construction.

Our construction of the Act should also be informed by the recognition that Congress has exempted agricultural enterprises from numerous statutes[7] to blunt the potentially onerous impact of its regulatory power on what were perceived in 1938 to be (and what today may well be) marginal enterprises whose survival Congress understandably thought was important to American life. While I sympathize with the urge to narrow the literal scope of this exemption and expand FLSA coverage for the benefit of appellants' employees, that motive ignores the tension between the Act's benefits and the desire of the 75th Congress not to burden any form of agriculture with this economic legislation.

The short of it is that in both functional and analytical terms, mushroom composting is agriculture: mushroom compost is, beyond peradventure, an agricultural commodity, and mushroom composting is as much a branch of farming as the growing of mushrooms or the cultivation of wheat. Because appellants' mushroom composting process falls "plainly and unmistakably" within the terms and spirit of the Act's agriculture exemption, I would reverse the judgment of the court below.

---

7. *See, e.g.,* 29 U.S.C. § 152(3) (1976) (exempting agricultural laborers as employees for the purposes of the Labor Management Relations (Taft-Hartley) Act); 26 U.S.C. §§ 3401(a)(2), 3306(a)(2) and (c)(1), 3121(a)(8)(A) and (B) (1976) (exempting employers of agricultural labor from withholding income and social insurance contributions and from payment of the unemployment compensation tax on certain agricultural wages); and 49 U.S.C. § 10526(a)–(6) (Special Pamphlet 1981) (exempting motor vehicles transporting agricultural or horticultural commodities from regulation under the Interstate Commerce Act).