.WALLING, Administrator of Wage and Hour Division, U. S. Dept. of Labor, v.
FRIEND et al.
No. 13311.

Circuit Court of Appeals, Eighth Circuit.
July 12, 1946.

Frederick U. Reel, Sr. Atty., U. S. Department of Labor, of Washington, D. C. (William S. Tyson, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., Reid Williams, Regional Atty., of Kansas City, Mo., and Morton Liftin and Helen Grundstein, Attys., U. S. Department of Labor, both of Washington, D. C., on the brief), for appellant.

Gene Frost, of Joplin, Mo., for appelices.

Before SANBORN, WOODROUGH, and RIDDICK, Circuit Judges.

WOODROUGH, Circuit Judge.

The Administrator of the Wage and Hour Division, United States Department of Labor, brought this action to enjoin defendants James Friend et al., co-partners, doing business as Owen Bros. & Friend Livestock Commission Company, from violating Sec. 15(a) (1, 2, 5) of the Fair Labor Standards Act, 29 U.S.C.A. § 215(a) (1, 2, 5). It was alleged that defendants were engaged in interstate commerce and subject to the provisions of the Act, and that they violated the Act by failing to keep required records and by requiring employees to work overtime without paying additional compensation for such work. The District court held that the employees involved were neither engaged in commerce nor in the production of goods for commerce and were, therefore, not within the protection of the Act, and dismissed the complaint. See Walling v. Friend, D.C., 63 F.Supp. 143. The case is before us on plaintiff's appeal from the decree dismissing the complaint.

The controlling facts are not controverted. Defendants are engaged in business in Joplin, Missouri, and act as brokers in selling livestock on commission basis for farmers and stock producers. Defendants rent office space from the Joplin Stockyards Company and use cattle pens, scales and other equipment of the stockyards company necessary to conduct their business. Livestock is consigned and shipped to defendants for sale, and on arrival at the stockyards the stock is sorted, graded and occasionally watered by defendants' employees. Upon sale, the stock is weighed by employees of the stockyards company and delivered to the purchaser. Ten to twenty percent of the consignors give out-of-state addresses when shipping livestock to defendants, and approximately 50 percent of stock sold by defendants is purchased by packers who ship most of it out of the state. Defendants have nothing to do with shipping in, billing out or transportation of the livestock sold.

This suit involves two office employees of defendants who perform clerical duties, including bookkeeping, accounting and ledger work. They prepare statements for sellers showing gross proceeds of sales, defendants' commissions and other expenses, and pay sellers net amounts due. They also prepare statements for purchasers and collect the purchase price.

The defendants admit that they do not comply with the record keeping provisions of the Fair Labor Standards Act and that at times the employees work longer than the statutory work week without overtime compensation.

Having in mind the remedial purposes of the Fair Labor Standards Act, we cannot escape the conclusion that regardless of whether defendants and their employees may be said to be engaged in commerce, they are without doubt engaged in the "production of goods for commerce" within the applicable provisions of the Act. The term "production of goods" is defined in Sec. 3(j) of the Act, 29 U.S.C.A.

§ 203(j), as including the "handling, transporting, or in any other manner working on such goods, or in any process or occupation necessary to the production thereof, in any State." Thus it appears that Congress intended the term "production of goods for commerce" to be comprehensive and to include every incidental operation preparatory to putting goods into the stream of commerce. Western Union Telegraph Co. v. Lenroot, 323 U.S. 490, 65 S.Ct. 335, 89 L.Ed. 414. Defendants sort and grade the stock and furnish facilities for sales to buyers who immediately ship much of the livestock out of the state. Defendants suggest that they have no way of knowing the places to which it is sent by the buyers, but the fact is that the activities of defendants constitute a necessary part of a general plan for sale and distribution of livestock and it is stipulated that much of the livestock is shipped out of the state. See Warren Bradshaw Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 127, 87 L.Ed. 83, wherein the Supreme Court said:

"Petitioner, closely identified as it is with the business of oil production, cannot escape the impact of the Act by a transparent claim of ignorance of the interstate character of the Texas oil industry."

Defendants conduct an operation preparatory to putting the goods into the stream of commerce.

In Enterprise Box Co. v. Fleming, 5 Cir., 125 F.2d 897, certiorari denied Enterprise Box Co. v. Holland, 316 U.S. 704, 62 S.Ct. 1312, 86 L.Ed. 1772, it was held that a Florida employer which manufactured and sold cigar boxes to cigar manufacturers who distributed their cigars in interstate commerce was engaged in the "production of goods for commerce" within the Fair Labor Standards Act, even though the employer's manufacturing was done in Florida and all its sales were made to the cigar maunfacturers within the state. See also Dize v. Maddrix, 4 Cir., 144 F.2d 584.

The clerical activities of defendants' employees are within the protection of the Act as activities necessary to the production of goods for commerce. Hertz Drivurself Stations, Inc., v. United States, 8 Cir., 150 F.2d 923; Borden Co. v. Borella, 325 U.S. 679, 65 S.Ct. 1223, 89 L.Ed. 1865.

The District court having found that defendants and their employees were not within the orbit of the Fair Labor Standards Act, did not specifically rule on other questions presented. But the appellees contend that even though we do not sustain the judgment of dismissal on the ground assigned by the District court, it should be affirmed on the ground that they are within the agricultural exemption of the Fair Labor Standards Act, and that, in any event, the record discloses no violation of the Act in regard to the employee Fred P. Evans, because this employee worked for two distinct employers and did not work more than 40 hours in any week for defendants. These questions were presented below and are briefed by the parties on appeal. Recognizing our duty to sustain a judgment if it is the proper one, even though the trial court assigns an improper reason for entering it, we consider these questions. J. E. Riley Investment Co. v. Commissioner of Internal Revenue, 311 U.S. 55, 61 S.Ct. 95, 85 L.Ed. 36; McGivern v. Northern Pacific R. Co., 8 Cir., 132 F.2d 213.

Section 13(a) (6) of the Fair Labor Standards Act, 29 U.S.C.A. § 213(a) (6), provides that wage and hour provisions should not apply to any employee employed in agriculture. The term "agriculture" is defined in Section 3(f) of the Act, 29 U.S. C.A. § 203(f):

"(f) 'Agriculture' includes farming in all its branches and among other things includes the cultivation and tillage of the soil, dairying, the production, cultivation, growing, and harvesting of any agricultural or horticultural commodities (including commodities defined as agricultural commodities in section 15(g) of the Agricultural Marketing Act, as amended), the raising of livestock, bees, fur-bearing animals, or poultry, and any practices (including any forestry or lumbering operations) performed by a farmer or on a farm as an incident to or in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market."

Clearly defendants' employees are not engaged in the raising of livestock, and if they are within the exemption it must be because they perform services "in conjunction with such farming operations, including preparation for market, delivery to storage or to market or to carriers for transportation to market." The Administrator of the Wage and Hour Division in Interpretative Bulletin 14, Paragraph 13, issued August, 1939, states that employees of commission brokers are not within the exemption because the practices performed by them do not constitute practices performed by a farmer, nor do they take place on a farm. The Administrator's interpretation has "peculiar persuasiveness and weight." Miller Hatcheries, Inc., v. Boyer, 8 Cir., 131 F.2d 283, at page 286. As pointed out in the Miller Hatcheries case, the exemptions contained in the Fair Labor Standards Act are subject to strict construction and should be extended only to those plainly within their terms. The Administrator's interpretation appears to be sound as applied to defendants' employees and the proof as to their activities does not bring them within the exemption of employees employed in agriculture.

Defendants' employee Evans was employed not only by defendants but also by the Art Owen Horse and Mule Market, and the District court found that while Evans worked more than 40 hours per week in approximately 20 weeks per year, he did not work overtime for these defendants, but noted that the circumstance was unimportant in view of the court's decision in the case. The owners of the horse and mule market are two in number and are members of the defendants' partnership. The two firms shared a common office in which Evans performed all his work. Each firm was an entirely separate and distinct business and each paid Evans a salary.

There is here no proof, and indeed no contention, that Evans' dual employment was intended to circumvent the provisions of the Fair Labor Standards Act or for any reason other than with the bona fide purpose of having a single employee serve the two employers in their common office as a matter of convenience to the parties. Evans performed entirely different services, though of a similar nature, for each employer. His services for one employer were of no benefit to the other. Mid-Continent Pipe Line Co. v. Hargrave, 10 Cir., 129 F.2d 655, is readily distinguishable in that the services performed there by watchmen guarding property of two employers during a strike were of mutual benefit to the employers and the evidence established that the employers were acting jointly in hiring the watchmen. United States v. Denver & R. G. R. Co., 8 Cir., 249 F. 464, is not authority for holding that defendants violated the Fair Labor Standards Act in regard to employee Evans. Our holding in the Denver Rio Grande case was required by the language of the Hours of Service Act involved and by the obvious purpose of that enactment to promote safety of persons and property.

Interpretative Bulletin No. 13, Paragraph 17, issued July, 1939, provides:

"In some cases, however, an employee may work 40 hours for company A and 15 additional hours during the same week on a different job for company B. In this case it would seem that if A and B are acting entirely independently of each other with respect to the enployment of the particular employee, both A and B, in ascertaining their obligations under the act, would be privileged to disregard all work performed by the employee for the other company. If, on the other hand, the employment by A is not completely disassociated from the employment by B, the entire employment of the employee for both A and B should be considered as a whole for the purpose of the statute. Whether the employment by A and B are completely disassociated depends, of course, upon the facts in all cases involving more than one employment and at least in the following situations, an employer will be considered as acting in the interest of another employer in relation to an employee: If the employers make an arrangement for the interchange of employees or if one company controls, is controlled by, or is under common control with, directly or indirectly, the other company."

As stated in the Bulletin, in determining whether two employers are acting independently in working an em-

ployee more than 40 hours in a week, the facts of the particular case are controlling. We hold that under the record before us the employment of Evans by defendants and the contemporaneous employment of Evans by the Art Owen Horse and Mule Market, did not constitute a violation of the Act. 29 U.S.C.A. § 207.

Judgment reversed and cause remanded for further proceedings in accordance with opinion.