The **COSTILLA LAND COMPANY,** Appellant,

v.

Clarence W. **ROBINSON,** Appellee.

Clarence W. **ROBINSON,** Cross-Appellant,

v.

The **COSTILLA LAND COMPANY,** Cross-Appellee.

Nos. 5304, 5305.

United States Court of Appeals Tenth Circuit.

Oct. 11, 1956.

Fred Neef, Denver, Colo. (Harry A. King and Rendle Myer, Denver, Colo., were with him on the brief), for appellant and cross-appellee.

Kenneth W. Robinson, Denver, Colo. (R. D. Charlton and Richard L. Schrepferman, Denver, Colo., were with him on the brief), for appellee and cross-appellant.

Before HUXMAN, MURRAH and PICKETT, United States Circuit Judges.

HUXMAN, Circuit Judge.

This was an action by Clarence W. Robinson, herein called Robinson, against the Costilla Land Company, herein called the Land Company, to recover real estate commissions allegedly earned by Robinson under an exclusive listing of real estate for sale by the Land Company.

Count One alleged that Robinson had produced a purchaser who was ready, willing and able to purchase some 71,000 acres of land from the Land Company on the terms and conditions set out in the listing contract but that the Land Company breached its contract by refusing to sell. Recovery was sought in the sum of $25,266.29 and interest.

Count Two alleged that Robinson had produced another purchaser for an additional tract of some 9,187 acres who was ready, willing and able to purchase according to the terms of the listing contract but that again the Land Company breached its contract. Robinson sought to recover $3,445.87 and interest because of this breach.

In Count Three Robinson sought to recover additional commissions. Judgment was confessed for the amount sought to be recovered and Count Three may, therefore, be disregarded.

Trial was had to the court. The court made findings of fact and conclusions of law and based thereon entered judgment for Robinson on Count One and in favor of the Land Company on Count Two. Both parties have appealed from the judgment adverse to them.

Five assignments of error are urged by the Land Company for reversal of the judgment entered against it on Count One. They can in our opinion be regrouped as follows: (1) The listing contract with Robinson had expired before he produced R. H. Garvey who it is alleged was willing and able to purchase some 71,000 acres of land on the terms of the listing; and (2) if the listing contract had not expired R. H. Garvey did not offer to purchase the land according to the terms of the listing contract.

The listing contract of July 22, 1947, gave Robinson the exclusive right for two years to sell certain of the lands owned by the Land Company. The pertinent provision of the contract provided that the listed lands should be sold (a) for prices ranging from $1.25 per acre to $7.50 per acre, depending upon their classification;

(b) that the down payment should be not less than 25% nor more than 30% of the total purchase price; and (c) the remaining payments "shall be made annually for such term of years as may be agreed upon between the Land Company and the purchaser."

The purchasers produced by Robinson were not produced within the primary term of the listing contract. The trial court, however, found that the listing contract had been extended by mutual agreement of the parties. Without entering into a discussion of the evidence, it is our conclusion that the record amply supports this finding by the trial court.

■ The trial court found that Robinson had produced R. H. Garvey who offered to purchase 71,000 acres of land and that his offer "conformed in all respects with the agreement of the parties relative to the sale of defendant's lands * * *" We think this finding is without support of any substantial evidence in the record. Because we think this statement is warranted by the plain language of the contract, we do not discuss the evidence upon which the trial court relied in support of its finding. The listing contract is silent as to the manner in which the unpaid balance of the purchase price was to be paid. The contract provides in language too clear to be misunderstood that the unpaid balance was to be paid in annual instalments "for such terms of years as may be agreed upon between the Land Company and the purchaser." Until the parties got together and agreed upon the number of years over which these payments were to be made, the agent had not produced a purchaser who was ready, willing and able to purchase upon the listed terms.

Refusal to complete the sale was not, however, predicated upon the inability to reach an agreement with respect to the payment of the unpaid portion of the purchase price. Had that been so, the agent would not have earned his commis-

sion because the Land Company was not required to agree to terms unacceptable to it. We must, however, conclude that the contract was executed in good faith and with the intent on the vendor's part to complete the sale if a purchaser was produced who could make the down payment and who could in addition meet any reasonable demand put forth in good faith on the vendor's part with respect to the payment of the unpaid balance of the purchase price.

■ While the Land Company was not required to agree to any terms for the deferred payments unacceptable to it, it was incumbent upon it to sit down with the purchaser and undertake in good faith to reach an agreement [1] and this it refused to do. The conclusion is inescapable that during the time the listing contract was in force the Land Company changed its mind and decided not to sell. This it could not do and escape the liability for commissions to the real estate agent who had produced a purchaser ready, willing and able to make the cash down payment and who according to the undisputed record was willing to negotiate on any reasonable terms as to the balance of the payments.

### Number 5305

■ In this case Robinson has appealed from a judgment denying him recovery of alleged commissions due because of the transaction set out in Count Two. In this Count Robinson sought recovery of commissions because of an offer of one D. D. Vaughn to purchase 9,187 acres of land at the listed price of $7.50 per acre. With respect to this offer, the court found that Vaughn offered to pay only 12½% in cash. We have a record consisting of nearly 300 pages of conflicting evidence which we have examined and from which different conclusions might be drawn. We do not feel warranted in belaboring the question by analyzing and setting out all the evidence which we think supports the court's finding. Suf-

1. Buckingham v. Harris, 1887, 10 Colo. 455, 15 P. 817, 818; Dickey v. Waggoner, 1941, 108 Colo. 197, 114 P.2d 1097, 1098; Gray v. Blake, 1953, 128 Colo. 381, 262 P.2d 741, 743-744; 8 Am.Jur. 1066, 1090, 1097, Brokers §§ 141, 174, 184.

**108**

fice it to say that we think the court's finding that Vaughn offered to pay only 12½% in cash is amply supported by the record and that he, therefore, was not a purchaser willing and able to buy according to the listing.

While the court's judgment appealed from in Number 5304 on Count One was in our opinion based on erroneous grounds, it is nonetheless correct and will, therefore, be and it is hereby affirmed.[2] The judgment appealed from in Number 5305 in Count Two is likewise affirmed. The costs are assessed two-thirds to appellant Land Company and one-third to appellant Robinson.

2. J. E. Riley Investment Co. v. Commissioner of Internal Revenue, 1940, 311 U. S. 55, 59, 61 S.Ct. 95, 85 L.Ed. 36; Helvering v. Gowran, 1937, 302 U.S. 238, 245, 58 S.Ct. 154, 82 L.Ed. 224; First National Bank in Wichita v. Luther, 10 Cir., 1955, 217 F.2d 262, 266; Kanatser v. Chrysler Corp., 10 Cir., 1952, 199 F.2d 610, 616, certiorari denied 344 U.S. 921, 73 S.Ct. 388, 97 L.Ed. 710; Kam Koon Wan v. E. E. Black, Limited, 9 Cir., 1951, 188 F.2d 558, 563, certiorari denied 342 U.S. 826, 72 S.Ct. 49, 96 L.Ed. 625; Walling v. Friend, 8 Cir., 1946, 156 F.2d 429, 431; In Re Barlum Realty Co., 6 Cir., 1946, 154 F.2d 562, 566; Jay v. Chicago Bridge & Iron Co., 10 Cir., 1945, 150 F. 2d 247, 249.