**W. Willard WIRTZ, Secretary of Labor, United States Department of Labor, Plaintiff,**

v.

**Clyde H. HEBERT, an individual, and Cotulla Livestock Commission Company, a Corporation, Defendants.**

**Civ. A. No. 63–C–103.**

United States District Court
S. D. Texas,
Corpus Christi Division.
March 24, 1965.

Richard L. Collier, Trial Attorney, United States Department of Labor, for plaintiff.

Virgil Howard, Corpus Christi, Tex., for defendants.

GRAVEN, District Judge (by assignment).

The plaintiff brought this action under the provisions of the Fair Labor Standards Act of 1938, as amended, Section 201 et seq., Title 29 U.S.C.A., to recover unpaid overtime compensation alleged to be due and owing Chris Walter, Jr. from both defendants for the period from April 23, 1961, until about March 26, 1963, in connection with his employment by them. It is the claim of the plaintiff that such employment was dual or joint in character. The complaint was filed on November 26, 1963. Chris Walter, Jr. is a resident of Beeville, Bee County, Texas. The defendant Clyde H. Hebert is a resident of Beeville, Bee County, Texas. The defendant Cotulla Livestock Commission Company is a Texas corporation. It has its principal place of business at Cotulla, La Salle County, Texas. Chris Walter, Jr. made a written request to the plaintiff to commence this action. Thereafter the plaintiff made a demand upon the defendants for the payment of the amount claimed to be owing to him, which demand was refused. The claim of the plaintiff that the employment of Chris Walter, Jr. by the defendants was dual or joint in character requires a consideration of the operations of the two defendants, the activities of Chris Walter, Jr. in connection therewith, and the relationship between the two defendants.

During the period of time referred to, the defendant Clyde H. Hebert as an individual was engaged in the operation of a livestock auction barn at Beeville where cattle, hogs and other animals were bought and sold. During the period of time referred to, the defendant Cotulla Livestock Commission Company was engaged in the operation of a livestock auction barn at Cotulla where cattle, hogs and other animals were bought and sold.

Substantial numbers of the cattle, hogs and other animals handled at the two auction barns were regularly shipped to points outside of Texas. It is undisputed that both defendants were engaged in commerce or in the production of goods for commerce and that Chris Walter, Jr. as their employee was also so engaged. The activities at both auction barns were seasonal in nature and variable in character. It is approximately one hundred miles between the two auction barns.

During the period of time referred to, the capital stock of the defendant Cotulla Livestock Commission Company was 1,300 shares. On April 23, 1961, the ownership of these shares was as follows:

| | |
|---|---|
| Clyde H. Hebert | 450 shares |
| Mary Clem Hebert (Mrs. Clyde H. Hebert) | 150 shares |
| Helen Butchee | 100 shares |
| Leonard Walker | 450 shares |
| Paul Peoples | 50 shares |
| W. R. Johnson | 100 shares |

In January, 1963, the corporation purchased the 450 shares owned by Leonard Walker and placed them in the corporation as treasury stock. Shortly thereafter the corporation sold 100 of those 450 shares to Ben Hopson. The officers of the corporation during the period of time referred to were:

| | |
|---|---|
| Clyde H. Hebert | President |
| W. R. Johnson | Vice-President |
| Mary Clem Hebert (Mrs. Clyde H. Hebert) | Secretary-Treasurer |

During the period of time referred to, the directors of the corporation were Helen Butchee, Leonard Walker and Paul Peoples. By way of summary, it is noted that during the period of the employment of Chris Walter, Jr. here involved, the defendant Clyde H. Hebert and his wife were officers of the defendant Cotulla Livestock Commission Company but were not directors of that Company; that during all except the last few weeks of that employment the defendant Clyde H. Hebert and his wife were minority stockholders in that Company; that during the last few weeks of that employment they had majority voting power because of the acquisition of treasury stock by that Company.

The minimum wage specified by the Fair Labor Standards Act was $1.00 per hour up to May 5, 1961, and $1.15 per hour from May 6, 1961, through March 26, 1963.

Auctions were generally held at the Beeville barn on Mondays and on Tuesdays at the Cotulla barn. The auction barn at Cotulla had need of extra help at its Tuesday auctions. A number of the employees at the Beeville barn, including Chris Walter, Jr., would go to the Cotulla barn on Tuesdays only for the purpose of assisting at the auction sales. The matter of Beeville employees going to the Cotulla barn on Tuesdays was optional with them. Several of the Beeville employees worked only part time. One of them worked only at the Beeville barn on Mondays and at the Cotulla barn on Tuesdays. Chris Walter, Jr. assisted with auction sales at the Beeville barn on Mondays. On Wednesdays, Thursdays, Fridays, Saturdays and occasionally on Sundays he did general repair work and cleaning work around the Beeville barn. He had Tuesdays off. The number of Beeville employees going to Cotulla for the auction sales' work on Tuesdays varied, depending upon how many of them wished to go.

Chris Walter, Jr. was the owner of a pick-up truck. Every Tuesday he would pick up those Beeville employees who wished to work that day at the Cotulla barn and transport them to that barn and back to Beeville at the end of the day. Chris Walter, Jr. and those he transported assisted with the Cotulla auction sales. Chris Walter, Jr. was paid $15.00 a trip for the transportation by the defendant Cotulla Livestock Commission Company. He and the others were paid for travel time in connection with each trip by the defendant Cotulla Livestock Commission Company. For his services at the auction barn at Beeville, he was compensated by the defendant Clyde H. Hebert, individually, at the rate of $1.00

per hour from April 23, 1961, up to May 5, 1961, and at the rate of $1.15 per hour from May 6, 1961, through March 26, 1963. During the period of time referred to, he frequently worked in excess of forty hours at the Beeville barn. For such excess hours he was compensated by the defendant Clyde H. Hebert, individually, at one and one-half the regular hourly rate. He and the other Beeville employees who worked on Tuesdays at the Cotulla barn were compensated for such services by the defendant Cotulla Livestock Commission Company at $1.00 per hour from April 23, 1961, up to May 5, 1961, and at the rate of $1.15 per hour from May 6, 1961, through March 26, 1963. During the period of time referred to, Chris Walter, Jr. did not in any week work in excess of forty hours at the auction barn of the defendant Cotulla Livestock Commission Company at Cotulla.

The defendant Clyde H. Hebert, in connection with the auction barn operated by him at Beeville, had his own separate set of books and payroll records. Those were kept at his place of business at Beeville. He had his own bookkeeper. The defendant Cotulla Livestock Commission Company, in connection with the auction barn operated by it at Cotulla, had its own separate set of books and payroll records. Those were kept at its corporate place of business at Cotulla. It had its own bookkeeper. For his services at the Beevile auction barn, Chris Walter, Jr. was paid by checks drawn upon the individual bank account of the defendant Clyde H. Hebert. For his services at the Cotulla auction barn he was paid by check drawn upon the corporation bank account of the defendant Cotulla Livestock Commission Company.

During the earlier part of the period here involved, one Frank Helvey was the manager of the auction barn operated by the defendant Cotulla Livestock Commission Company at Cotulla. During the remainder of the period Ben Hopson was the manager of that barn. Those managers supervised the activities of those working at that barn. The defendant Clyde H. Hebert generally was present at the Tuesday auction sales at the Cotulla barn, at which times he met customers and did a variety of other things in connection with the auction sales.

In March, 1963, Chris Walter, Jr.'s employment was terminated following a dispute between him and the defendant Clyde H. Hebert in connection with the matter of picking up a particular worker for the Tuesday work at Cotulla.

It was heretofore noted that Chris Walter, Jr. was paid at the proper overtime rate for hours worked by him in excess of forty at the Beeville barn and at the proper regular rate for the hours worked by him at the Cotulla barn, none of which latter hours were in excess of forty per week. It is the contention of the plaintiff that it was the case of dual or joint employment and that, therefore, the hours worked at the Cotulla barn during each week should be added to the hours worked at the Beeville barn for overtime compensation purposes.

The Fair Labor Standards Act does not contain any specific provision relating to the matter of dual or joint employment. However, Section 203(g), Title 29 U.S. C.A., which is in the Section relating to definitions, provides as follows: "(g) 'Employ' includes to suffer or permit to work." That definition is very broad in its scope. The position of the plaintiff herein is in accord with an interpretation of the Act by the Wage and Hour Division set forth in the case of Walling v. Friend (8th Cir. 1946), 156 F.2d 429, 432. That interpretation is as follows:

"Interpretative Bulletin No. 13, Paragraph 17, issued July, 1939, provides:

" 'In some cases, however, an employee may work 40 hours for company A and 15 additional hours during the same week on a different job for company B. In this case it would seem that if A and B are acting entirely independently of each other with respect to the enployment [*sic*] of the particular employee, both A and B, in ascertain-

ing their obligations under the act, would be privileged to disregard all work performed by the employee for the other company. If, on the other hand, the employment by A is not completely disassociated from the employment by B, the entire employment of the employee for both A and B should be considered as a whole for the purpose of the statute. Whether the employment by A and B are completely disassociated depends, of course, upon the facts in all cases involving more than one employment and at least in the following situations, an employer will be considered as acting in the interest of another employer in relation to an employee: If the employers make an arrangement for the interchange of employees or if one company controls, is controlled by, or is under common control with, directly or indirectly, the other company.' "

■ Where an employee works for two employers during a usual workweek and his combined weekly hours are in excess of forty, and his two employers have some connection with each other and the employee is not compensated for the excess hours at the rate fixed by the Fair Labor Standards Act, there is present the possibility that the two employers are circumventing the provisions of that Act. Even though it was not the intention of the two employers to circumvent the provisions of the Act, yet the relations between the two employers and the nature of the work performed by the employee may be such that his employment should properly be considered as dual or joint employment within the purview of the Act.

■■ In the present case, it is clear that the two defendants did not have the intention of circumventing the provisions of the Act. Chris Walter, Jr. received substantial overtime compensation nearly every week from the defendant Clyde H. Hebert for the hours worked by him at the Beeville barn in excess of forty. It

also appears that because of the seasonal nature of auction barn activities the defendants were entitled to fourteen exempt workweeks under the provisions of Section 207(b) . (3), Title 29 U.S.C.A. The plaintiff concedes that the defendants were entitled to that exemption and has excluded fourteen weeks in each calendar year in the amount of the recovery asked herein. The defendant Clyde H. Hebert did not claim the seasonal employment exemption and paid Chris Walter, Jr. overtime compensation during all the weeks here involved in which he worked in excess of forty hours at the Beeville barn. The defendant Cotulla Livestock Commission Company paid all of the employees coming over from Beeville for travel time. Under Section 254(a) (1), Title 29 U.S.C.A., of the Portal to Portal Act, employees are not entitled to compensation for traveling to their place of employment.

The fact that the defendants had no intention of circumventing the provisions of the Fair Labor Standards Act would not relieve them from the liability asserted against them herein if they were in fact dual or joint employers of Chris Walter, Jr. within the purview of the Fair Labor Standards Act.

There are three leading cases on the matter of dual or joint employment within the purview of the Act. They are Mid-Continent Pipe Line Co. v. Hargrave, 129 F.2d 655 (10th Cir. 1942); Walling v. Friend, 156 F.2d 429 (8th Cir. 1946); and Mitchell v. John R. Cowley & Bro., Inc., 292 F.2d 105 (5th Cir. 1961). The case of Mid-Continent Pipe Line Co. v. Hargrave, supra, involved employees who were employed as watchmen by a petroleum company and a pipe line company. Their combined weekly hours of work were in excess of forty. They brought an action to recover for such overtime compensation. The lower court found that the two companies acted jointly in connection with the employment and granted a joint judgment against them for such compensation. On

appeal that judgment was affirmed. The Court stated (pp. 658–659 of 129 F.2d) :

"Next comes the contention that since it was established by the evidence that the two companies were separate and distinct corporate entities and that each acted separately from the other in respect to the employment of the watchmen, the joint judgment resulted in an unwarranted increase in the amount of the recovery. The court found in substance that the two companies were acting jointly when any of the claimants were said to have been employed for a time by one of the companies during the period in question and for a time by the other. The companies acted separately in issuing checks in payment of the wages of the claimants. But there was testimony that both companies employed a single person to hire the watchmen, that he worked for both in employing them, that they were employed to guard the properties of both, that they worked part of the time under the employ of one and part under the employ of the other, and that sometimes they worked for both at the same time. The evidence and the fair inferences to be drawn from it support the finding. It therefore must stand on appeal. Rule of Civil Procedure 52(a), 28 U.S.C.A. following section 723c. And certainly if the two companies acted jointly in the premises a joint judgment against them was warranted."

The case of Walling v. Friend, supra, involved, among other questions, the question of the status of the employment of one Evans in connection with overtime compensation under the Fair Labor Standards Act. A partnership of several members known as Owen Bros. & Friend Livestock Commission Company was engaged in the livestock commission business at a stockyard in Joplin, Missouri. Two of the members of that partnership were members of a partnership known as the Art Owen Horse and Mule Market. The two firms shared a common office where Evans performed all of his services. He performed clerical services for both firms. The plaintiff in that action was the Administrator of the Wage and Hour Division of the United States Department of Labor. In that action he sought to enjoin the Owen Bros. & Friend Livestock Commission Company from alleged violations of the Fair Labor Standards Act in connection with the employment of Evans and another employee. Evans worked more than forty hours per week in many weeks in connection with the clerical work performed by him for both firms but did not work in excess of forty hours for either firm. He was not paid overtime compensation. It was the claim of the plaintiff that the Owen Bros. & Friend Livestock Commission Company violated the provisions of the Act in not paying him overtime compensation. That claim of the plaintiff was based upon the theory that it was a case of joint employment and the trial court held that it was. The United States Court of Appeals for the Eighth Circuit reversed that holding. The Court stated (156 F.2d p. 432) :

"There is here no proof, and indeed no contention, that Evans' dual employment was intended to circumvent the provisions of the Fair Labor Standards Act or for any reason other than with the bona fide purpose of having a single employee serve the two employers in their common office as a matter of convenience to the parties. Evans performed entirely different services, though of a similar nature, for each employer. His services for one employer were of no benefit to the other. * * *."

The Court then referred to the Interpretative Bulletin heretofore set out and then stated (pp. 432, 433) :

"As stated in the Bulletin, in determining whether two employers are acting independently in working an employee more than 40 hours in a week, the facts of the particular case are controlling. We hold that under the record before us the em-

ployment of Evans by defendants [members of the firm of Owen Bros. & Friend Livestock Commission Company] and the contemporaneous employment of Evans by the Art Owen Horse and Mule Market, did not constitute a violation of the Act. * * *."

The case of *Mitchell v. John R. Cowley & Bro., Inc.,* supra, dealt with a number of questions. The decision in that case being that of the United States Court of Appeals for the Fifth Circuit, is authoritative so far as it bears on the question in the present case. In that case the plaintiff, Secretary of Labor, sought to recover the amounts allegedly due one Allen under the provisions of the Fair Labor Standards Act from the defendants, John R. Cowley & Bro., Inc. and Marine Junk Company, Inc. There was involved the question as to whether the activities of Allen were such that he was to be regarded as employed in commerce within the purview of the Act. There was also involved the question as to whether Allen was an independent contractor. There was also involved the question of joint employment. A trial was had to a jury which returned a verdict *in favor of both defendants.* On appeal it was held that the jury should have been peremptorily instructed that Allen was within the coverage of the Act and that he was jointly employed by the two defendants. The two defendants operated adjacent but separately owned junk yards in Mobile, Alabama. They entered into contracts with Allen whereby he was to furnish service as a watchman for the two yards during nighttime and week-end closings. The Court, in passing upon the question of joint employment, stated (292 F.2d p. 112):

"This inquiry does not involve the question whether Cowley and Marine jointly entered into a contract with Allen as a joint employee. It, as the case of employment status, is a question whether for the purposes of the Act he may be deemed to be doing work for both so that the hours worked are aggregated to determine compliance with the requirements concerning hours of work and rates of pay. The significant element is the doing of work for both jointly, not the existence of a joint contract or a legal status of a joint employee. In view of this the actual circumstances of employment again become relevant. Identical contracts, executed initially and terminated finally on the same days, indicate a mutual purpose. And the work to be performed was identical. *But of even more significance, the presence of Allen on the premises of either Cowley or Marine was beneficial to both.* He was to watch for vandalism, fire, the presence of unauthorized persons, or any other harm that might befall the plant and equipment of either. The properties were contiguous. That meant that while he was on Cowley's lot he was in a position to detect or quickly learn of many of the dangers to Marine's property which he was employed to prevent, and vice versa. Consequently Marine's plant was much safer during such intervals than it would have been had Allen been nowhere in the area. Cf. Walling v. Friend, 8 Cir., 1946, 156 F. 2d 429, at page 432. More than that, this contract was not on an hourly basis. It called for watchman service to be continuously supplied during the stated hours. And that contract expressly recognized that he need not be on the premises all of the time. What was required was a patrol once an hour. The result is that during all of this time Allen was literally performing for each. Performing for each simultaneously he was, for the purposes of the Act, performing for them jointly. The hours for one are not to be deducted from the other. Neither are all of the hours for each (91) to be doubled. [Emphasis supplied]

"Under the applicable decisions we think these circumstances compel

a finding that Allen was jointly employed. * * *."

In the present case, subsequent to the termination of the employment of Chris Walter, Jr., the defendant Clyde H. Hebert and his wife disposed of all of their stock in the defendant Cotulla Livestock Commission Company and terminated all connection with that Company. Thereafter, the Cotulla Livestock Commission Company continued the practice of employing employees of the Beeville barn at its Tuesday auction sales at Cotulla.

■ In the present case the services in question were rendered by Chris Walter, Jr. at points one hundred miles apart and on different working days. In the case of Mitchell v. John R. Cowley & Bro., Inc., supra, the services of the employee in question were rendered for both employers during the same working period and at the same locale. The situation was the same in the case of Walling v. Friend, supra. In the first case recovery was allowed on the theory of dual or joint employment and in the second case recovery on that theory was denied. In the present case the two employers were separate business entities who maintained separate payroll records and each paid its employees from its own funds. The situation was the same in the case of Mid-Continent Pipe Line Co. v. Hargrave, supra, and Mitchell v. John R. Cowley & Bro., Inc., supra. In both cases recovery was nevertheless allowed on the theory of dual or joint employment.

In the cases of Mitchell v. John R. Cowley & Bro., Inc., supra, and Walling v. Friend, supra, the Court in each case stressed the importance of mutual benefit of the two employers. In the former case the Court stated (292 F.2d p. 112): "But of even more significance, the presence of Allen on the premises of either Cowley or Marine was beneficial to both." In the latter case the Court, in denying recovery, stated (156 F.2d p. 432): "His services for one employer were of no benefit to the other." In the latter case,

as noted, the same employee worked in the same office during his regular working hours for two partnerships that had interlocking partners.

In the present case it is clear that the work performed by Chris Walter, Jr. at the Beeville barn was not of any benefit to the defendant Cotulla Livestock Commission Company. Therefore, the claim of mutual benefit would have to be predicated upon the theory that the services performed by Chris Walter, Jr. and the other Beeville employees at the Cotulla barn were for the mutual benefit of the defendant Clyde H. Hebert and the defendant Cotulla Livestock Commission Company. The fact that the defendant Cotulla Livestock Commission Company continued to make use of the Beeville employees when the defendant Clyde H. Hebert no longer had any interest in the Cotulla Livestock Commission Company is indicative of the fact that the employment by it of the Beeville workers was exclusively for its own benefit. The only benefit the defendant Clyde H. Hebert could derive from the services of the Beeville workers by the Cotulla Livestock Commission Company would be such benefit as he might derive from being a stockholder in the latter corporation. Such benefit would be indirect and somewhat tenuous. It is the view of the Court it cannot be said that the employment of Chris Walter, Jr. was for the mutual benefit of the defendant Clyde H. Hebert and the defendant Cotulla Livestock Commission Company.

After a consideration of all of the facts and circumstances in this case, it is the finding of the Court that Chris Walter, Jr., during the period of time in question, was not jointly employed by the defendant Clyde H. Hebert and the defendant Cotulla Livestock Commission Company within the purview of the Fair Labor Standards Act.

It is the holding of the Court that the hours worked by Chris Walter, Jr., during the period of time in question, at the Beeville and Cotulla barns may not be aggregated for purposes of overtime com-

pensation under the Fair Labor Standards Act.

The foregoing shall constitute the Findings of Fact and Conclusions of Law herein.

It is ordered that judgment be entered in favor of the defendants.